IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| JOHN A. SAKYI, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| V. | § | No. 3:23-cv-1914-B-BN |
| | § | |
| ABENA FOSUA BERKO, | § | |
| | § | |
| Defendant. | § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

Plaintiff John A. Sakyi, resident in Texas, filed a *pro se* complaint against his ex-wife, Defendant Abena Fosua Berko, who he alleges now resides in Illinois, paying the filing fee to do so. *See* Dkt. Nos. 4 & 8.

United States District Judge Jane J. Boyle referred this lawsuit to the undersigned United States magistrate judge for pretrial management under 28 U.S.C. § 636(b). *See* Dkt. No. 9.

Sakyi then made a filing "invoking 28 U.S. Code 1782" [Dkt. No. 10], requesting that the Court stay this proceeding to allow Sakyi to pursue discovery abroad (the Motion to Stay).

Sakyi's allegations are difficult to follow. But they do concern his marriage to Berko, the sole defendant, and therefore cause the undersigned to question whether there is federal subject matter jurisdiction – and, if there is, whether the Court should abstain from adjudicating the claims raised.

After reviewing the complaint, the attachments thereto, and the applicable

state court record, as a public record of which the Court may take judicial notice under Federal Rule of Evidence 201, *see Stiel v. Heritage Numismatic Auctions, Inc.*, 816 F. App'x 888, 892 (5th Cir. 2020) (per curiam), the undersigned enters these findings of fact, conclusions of law, and recommendation that the Court should dismiss the complaint for lack of subject matter jurisdiction or, as applicable, abstain from considering Sakyi's allegations.

## Applicable Background

Earlier this year, the Dallas Court of Appeals affirmed the parties' divorce decree entered by a state court in Dallas County, and the Texas Supreme Court refused to review the decision of the state court of appeals. *See Sakyi v. Sakyi*, No. 05-21-00960-CV, 2023 WL 154861 (Tex. App. – Dallas Jan. 11, 2023), *pet. & reh'g denied*, No. 23-0126 (Tex. 2023). This applicable background is from the decision of the state court of appeals:

> In 2006, Husband and Wife purchased a home in Cedar Hill, Texas as their marital residence (the Property). The year before the purchase, Husband and Wife had participated in a wedding ceremony in Ghana. It was later discovered, however, that Wife's divorce from another individual named Ian Joseph was not final until 2007.
> Wife filed her initial petition for divorce on August 15, 2019. In her petition, she alleged that the parties were married on January 13, 2011. Husband filed an original counterpetition for divorce alleging that the parties were married on December 24, 2005. Both parties alleged that they stopped living together as husband and wife in October 2018.
> Husband specially excepted to Wife's petition, alleging that she incorrectly identified the parties' marriage date. In her first amended petition, however, Wife continued to allege that the parties were married on January 13, 2011.
> In June, 2020, Husband sought leave to amend his pleadings, arguing that Joseph was a necessary party "due to his interest in the marital property." In the motion, Husband alleged that his counsel

received confirmation that Wife and Joseph were married in 2003 and were still married when Wife and Husband married in 2005. Husband pleaded that he and Wife purchased real property in 2006 while Wife was still married to Joseph, and that Wife and Joseph were not divorced until 2007.

Husband also moved for a continuance of the trial date, arguing that "the marital estate cannot be properly traced" due to Wife's overlapping marriages, and requesting additional time for discovery. When the trial court denied Husband's motions, Husband sought mandamus relief in this Court. *In re Sakyi*, No. 05-20-00574-CV, 2020 WL 4879902, at *2 (Tex. App. – Dallas Aug. 20, 2020, orig. proceeding) (mem. op.).

We granted mandamus relief in part, concluding that the trial court's order denying Husband's June 2, 2020 request for continuance was an abuse of discretion. *See id.* at *3. We explained that "the discovery sought is central to the underlying divorce suit since [Wife's] marriages, if overlapping, may affect the determination of what property is in the marital estate at issue and raise equitable considerations of possible fraud." *Id.* at *4. We cited affidavit testimony of Husband's attorney that she discovered the overlapping marriage dates the week of May 25, 2020, and used diligence in attempting to obtain relevant evidence. *Id.* We concluded the trial court abused its discretion by denying Husband's motion for continuance "because the discovery [Husband] seeks goes to the heart of what property belongs in the marital estate." *Id.* On August 20, 2020, we conditionally granted the writ in part, directing the trial court to vacate its denial of the June 2, 2020 motion for continuance, *id.* at *5, and the trial court complied.

In his operative pleading filed on March 15, 2021, Husband continued to allege that the parties were married on December 24, 2005, but he added that he was "induced by [Wife's] fraud, duress or force" into marriage on that date. He pleaded for an annulment, or in the alternative, for a divorce. The case proceeded to trial on April 21, 2021.

Husband and Wife each filed an inventory and appraisement that was admitted as an exhibit at trial. Each party's inventory began with the heading "Community Estate of the Parties." Each party listed the Property as the first item under this heading. Husband made no objection to either exhibit.

Similarly, Husband's proposed property division admitted as Exhibit R-2 lists the Property under "Community Property – Real Property & Real Estate." And in his summary of requested relief admitted as Exhibit R-1, Husband asserted that he should be awarded the Property in its entirety.

>Wife offered evidence that the Property was purchased in 2006, and she testified that both her name and Husband's were on the deed. She explained, however, that the original mortgage loan was in her name, as was all subsequent refinancing. The last modification to the loan had been made in 2017. She testified that Joseph, her former spouse, did not have any claim to any of the property to be divided by the trial court: the Property had never been deeded to Joseph, he was not a party to any of the loan modifications, she never bought property with Joseph, and she never gave any of Husband's property to Joseph.
>
>Wife testified that the Property was a community property asset. She requested that the Property should be sold and the proceeds divided seventy percent to her and thirty percent to Husband, explaining that she was the primary breadwinner in the marriage and had to liquidate her retirement account in order to pay community debts.
>
>Husband conceded that Wife "was responsible for the mortgage" on the Property. He made no claim to any separate property interest in the Property at trial.
>
>In a memorandum to the parties, the trial court ruled that the 2005 marriage ceremony was void because Wife was married to Joseph at the time. The court further found that the parties' marriage became valid when they "renewed" their vows in 2011. The court divided the community property based on the evidence presented at trial. The court noted that "the most hotly contested asset is the marital home," and "to reach a just and right division of the property the home is granted 100% to the wife as her sole and separate property." Accordingly, the court's subsequent decree awarded the Property to Wife as her portion of the parties' "marital estate."
>
>In a motion for new trial, Husband argued for the first time that as a tenant in common when the Property was purchased, he held a separate property interest that the trial court could not divest. The trial court denied Husband's motion, and this appeal followed.

2023 WL 154861, at *1-*2.

Sakyi's current allegations concern issues raised and determined in the state court proceedings. *See, e.g.*, Dkt. No. 4 at 1-3 (referring repeatedly to a sham marriage, bigamy, and proceedings in Ghana; claiming that Berko was "unjustly awarded" the home and asserting claims to establish his right to possess the home; and seeking injunctive relief from the Court, including that Berko be barred from

- 4 -

selling the home and that Sakyi's name be reinstated to the deed of trust).

Attachments to the complaint include filings from multiple court proceedings in the nation of Ghana and in Dallas County, Texas. *See id.* at 4-44.

And the Motion to Stay indicates that, after Sakyi filed this lawsuit, he was still seeking relief from a Dallas County state court concerning matters that he has raised in this lawsuit. *See* Dkt. No. 10.

## Discussion

"The burden of establishing subject matter jurisdiction in federal court rests on the party seeking to invoke it." *St. Paul Reinsurance Co., Ltd. v. Greenberg*, 134 F.3d 1250, 1253 (5th Cir. 1998) (footnote omitted). Sakyi's paying the filing fee does not relieve him of this burden.

Nor does it relieve the Court from its independent duty to ensure that there is subject matter jurisdiction, *see Ruhrgas AG v. Marathon Oil Co.*, 526 U.S. 574, 583-84 (1999), as "[j]urisdiction is the power to say what the law is," *United States v. Willis*, 76 F.4th 467, 479 (5th Cir. 2023).

> "Federal courts are courts of limited jurisdiction." Article III, § 2, of the Constitution delineates "[t]he character of the controversies over which federal judicial authority may extend." And lower federal-court jurisdiction "is further limited to those subjects encompassed within a statutory grant of jurisdiction." Accordingly, "the district courts may not exercise jurisdiction absent a statutory basis."

*Home Depot U.S.A., Inc. v. Jackson*, 139 S. Ct. 1743, 1746 (2019) (cleaned up). "Subject matter jurisdiction defines the court's authority to hear a given type of case." *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009) (cleaned up).

"The basic statutory grants of federal-court subject matter jurisdiction are

contained in 28 U.S.C. §§ 1331 and 1332." *Arbaugh v. Y&H Corp.*, 546 U.S. 500, 513 (2006) (cleaned up).

> In 28 U.S.C. §§ 1331 and 1332(a), Congress granted federal courts jurisdiction over two general types of cases: cases that "aris[e] under" federal law, [28 U.S.C.] § 1331, and cases in which the amount in controversy exceeds $ 75,000 and there is diversity of citizenship among the parties, [28 U.S.C.] § 1332(a). These jurisdictional grants are known as "federal-question jurisdiction" and "diversity jurisdiction," respectively. Each serves a distinct purpose: Federal-question jurisdiction affords parties a federal forum in which "to vindicate federal rights," whereas diversity jurisdiction provides "a neutral forum" for parties from different States.

*Home Depot*, 139 S. Ct. at 1746 (cleaned up).

Related to Section 1331, Sakyi alleges claims under 42 U.S.C. § 1983 on the basis that Berko violated Sakyi's constitutional rights.

But "[a] plaintiff makes out a § 1983 claim [only] if he 'shows a violation of the Constitution or of federal law, and then shows that the violation was committed by someone acting under color of state law,'" *Rich v. Palko*, 920 F.3d 288, 293-94 (5th Cir. 2019) (cleaned up; quoting *Brown v. Miller*, 519 F.3d 231, 236 (5th Cir. 2008)).

"The traditional definition of acting under color of state law requires that the defendant … have exercised power 'possessed by virtue of state law and made possible only because the wrongdoer is clothed with the authority of state law.'" *Gomez v. Galman*, 18 F.4th 769, 775 (5th Cir. 2021) (per curiam) (quoting *West v. Atkins*, 487 U.S. 42, 49 (1988) (quoting, in turn, *United States v. Classic*, 313 U.S. 299, 326 (1941))).

Sakyi fails to allege facts to support this required element of a claim under

Section 1983 and therefore fails to raise a substantial, disputed question of federal law or show that there is federal jurisdiction over an otherwise state-law claim. *See, e.g.*, *Mitchell v. Clinkscales*, 253 F. App'x 339, 340 (5th Cir. 2007) (per curiam) ("[A]lthough Mitchell argues that Clinkscales is liable under 42 U.S.C. § 1983, Mitchell does not allege facts demonstrating that Clinkscales acted under color of state law; thus, Mitchell failed to plead and establish subject-matter jurisdiction based on the existence of a federal question. [And t]he district court was required to dismiss the complaint." (citation omitted)); *Harrington v. City of Shiner, Tex.*, No. 6:20-cv-00039, 2021 WL 4503013, at *5 (S.D. Tex. Sept. 30, 2021) ("Harrington failed, not in stating conclusory or vague facts to support his Section 1983 claim, but in showing that the Section 1983 claim was not frivolous, insubstantial, or patently without merit given the facts that he *did* allege. Thus, the district court concluded that the claim did not raise a federal question given the lack of a foundation for the Section 1983 claim – that is, an alleged constitutional rights violation – as well as the lack of any factual allegations that could even imply the applicability of the statute." (discussing prior dismissal by the court; citations omitted)).

And, insofar as Sakyi contends there is federal-question jurisdiction based on his citation to federal statutes that may be related to his sham marriage allegations – 8 U.S.C. § 1325, a provision of the Immigration and Nationality Act (INA), and 18 U.S.C. § 1546, a federal criminal statute pertaining to fraud and misuse of visas, permits, and other documents – "decisions whether to prosecute or file criminal charges are generally within the prosecutor's discretion, [so], as a private citizen,

[Sakyi] has no standing to institute a federal criminal prosecution and no power to enforce a criminal statute," *Gill v. State of Tex.*, 153 F. App'x 261, 262-63 (5th Cir. 2005) (per curiam) (citing *Linda R.S. v. Richard D.*, 410 U.S. 614, 619 (1973); *United States v. Batchelder*, 442 U.S. 114, 124 (1979)); *see also Lefebure v. D'Aquilla*, 15 F.4th 650, 654 (5th Cir. 2021) (In *Linda R.S.*, "the Court repeatedly emphasized 'the special status of criminal prosecutions in our system.' It is a bedrock principle of our system of government that the decision to prosecute is made, not by judges or crime victims, but by officials in the executive branch. And so it is not the province of the judiciary to dictate to executive branch officials who shall be subject to investigation or prosecution.... As a result, courts across the country have dutifully enforced this rule in case after case – refusing to hear claims challenging the decision not to investigate or prosecute another person." (collecting cases; citations omitted)).

Relatedly, criminal statutes usually will not create civil liability and provide for jurisdiction under Section 1331. *See, e.g., Ennis Transp. Co. Inc. v. Richter*, No. 3:08-cv-2206-B, 2009 WL 464979, at *1 (N.D. Tex. Feb. 24, 2009) ("It is well established that generally there is no private cause of action for the violation of a federal criminal statute, and thus no jurisdiction for federal courts to preside over a suit between private parties when the only federal law allegedly violated is criminal. In rare circumstances, however, where a criminal statute has 'a statutory basis for inferring' the existence of a civil action, violation of a criminal statute may give rise to a private cause of action." (citations omitted)).

The complaint does not allow the Court to infer that the provision of the INA and the federal criminal statute cited provide for a private cause of action and thus federal-question jurisdiction. *See also Kemp v. Place Alliance L.L.C.*, No. 6:22-cv-262-PGB-LHP, 2022 WL 3136895, at *3 (M.D. Fla. June 15, 2022) (collecting authority as to 8 U.S.C. § 1325's failure to provide for a private cause of action), *rec. adopted*, 2022 WL 3136884 (M.D. Fla. July 11, 2022).

In short, Sakyi fails to establish federal-question jurisdiction under Section 1331.

Sakyi also asserts that the Court has jurisdiction under Section 1332.

But, to the extent that the amount in controversy exceeds $75,000 based on the alleged value of the home or Sakyi's interest in the home, Sakyi fails to allege complete diversity of citizenship. *See, e.g., SXSW v. Fed. Ins. Co.*, ___ F.4th ___, No. 22-50933, 2023 WL 6472562, at *1 (5th Cir. Oct. 5, 2023) ("'The difference between *citizenship* and *residency* is a frequent source of confusion.' For natural persons, § 1332 citizenship is determined by domicile, which requires residency plus an intent to make the place of residency one's permanent home. An allegation of residency alone 'does not satisfy the requirement of an allegation of citizenship.'" (emphasis in original; citations omitted)).

And, even if there is complete diversity of citizenship, to the extent that Sakyi raises claims to obtain an interest in the home, such claims request that this Court review the propriety of the state court-entered divorce decree, which awarded Berko 100% of the home.

His claims therefore implicate the narrow domestic relations exception to Section 1332 jurisdiction. *See, e.g.*, *Escalante v. Lidge*, 34 F.4th 486, 49-91 (5th Cir. 2022) (discussing "[t]he clearest modern elaboration of the exception," as set out in *Ankenbrandt v. Richards*, 504 U.S. 689, 704 (1992) ("[T]he domestic relations exception encompasses only cases involving the issuance of a divorce, alimony, or child custody decree.")).

And, even if the domestic relations exception does not deprive the Court of jurisdiction under Section 1332, "'in certain circumstances' a court might apply the exception more broadly based on 'the abstention principles developed in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943)'" – including "where a suit present[s] difficult and important questions of state law and 'the suit depend[s] on a determination of the status of the parties.'" *Escalante v. Lidge*, 34 F.4th at 491 (quoting *Ankenbrandt*, 504 U.S. at 705, 706); *see also DuBroff v. DuBroff*, 833 F.2d 557, 561 (5th 1987) ("In *Burford v. Sun Oil Co.*, … the [United States] Supreme Court established the principle that some cases properly brought in federal courts should nevertheless be dismissed to the state courts for resolution because of a concern for comity between sovereigns."); *Begum v. Miner*, 213 F.3d 639 (table), 2000 WL 554953, at *3 (5th Cir. Apr. 20, 2000) ("*Ankenbrandt* recognized that even though the suit did not fall within the domestic relations exception, suits 'involving elements of the domestic relationship' might be subject to *Burford* abstention when they present 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar.'" (citation omitted)).

There are two prerequisites to *Burford* abstention.

First, "timely and adequate state-court review [must be] available." *Estate of Merkel v. Pollard*, 354 F. App'x 88, 93 (5th Cir. 2009) (per curiam) (quoting *New Orleans Pub. Serv., Inc. v. City Council of New Orleans*, 491 U.S. 350, 361 (1989) (*NOPSI*)).

And, "before the court may abstain, the federal court be sitting in equity or otherwise petitioned for discretionary relief." *Id.* (citing *NOPSI*, 491 U.S. at 361; *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996)); *see also Kinder Morgan, Inc. v. Crout*, 814 F. App'x 811, 816 (5th Cir. 2020) (per curiam) ("The Supreme Court has extended the applicability of abstention doctrines to 'all cases in which a federal court is asked to provide some form of discretionary relief.'" (quoting *Quackenbush*, 517 U.S. at 730)).

Both prerequisites are met here.

Sakyi has already utilized the state courts to review issues raised in this lawsuit. In fact, these pursuits appear to have been ongoing at the time that he filed this lawsuit insofar as the complaint cites a pending lawsuit that Sakyi filed against Berko in Dallas County (DF-23-07845), *see* Dkt. No. 4 at 2, 6, & 29, and includes as an attachment Sakyi's attempt to recall the mandate as to the decision of the Dallas Court of Appeals affirming the divorce decree, *see id.* at 44; *see also* Dkt. No. 10.

As to the second prerequisite, in addition to requesting damages, Sakyi seeks injunctive relief. *See id.* at 4.

> If, as they are here, these prerequisites are met, "a federal court ... must decline to interfere ... : (1) when there are 'difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar'; or (2) where the 'exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern.'"

*Pollard*, 354 F. App'x at 93 (quoting *NOPSI*, 491 U.S. at 361 (quoting, in turn, *Colo. River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976))).

Courts in this circuit consider

> five factors to determine whether *Burford* abstention is appropriate: "(1) whether the cause of action arises under federal or state law; (2) whether the case requires inquiry into unsettled issues of state law or into local facts; (3) the importance of the state interest involved; (4) the state's need for a coherent policy in that area; and (5) the presence of a special state forum for judicial review."

*Id.* at 94 (quoting *Moore v. State Farm Fire & Cas. Co.*, 556 F.3d 264, 272 (5th Cir. 2009)).

As to the first factor, "*Burford* abstention does not so much turn on whether the plaintiff's cause of action is alleged under federal or state law, as it does on whether the plaintiff's claim may be in any way entangled in a skein of state law that must be untangled before the federal case can proceed." *Pollard*, 354 F. App'x at 94 (quoting *Sierra Club v. City of San Antonio*, 112 F.3d 789, 795 (5th Cir. 1997)).

In the context of family law, examples of federal causes of action that were found to be "entangled in a skein of state law" include an estate's federal quiet-title claim that "turn[ed] entirely on Texas domestic-relations law," *id.*, and a federal RICO claim that was "inextricably entangled in state court issues" in part because the money allegedly "used in furtherance of illegal activities was primarily marital

property subject to multiple state court orders," *Peterson v. Peterson*, No. 4:18-CV-4837, 2019 WL 8017862, at *5 (S.D. Tex. Oct. 30, 2019), *rec. adopted*, 2020 WL 883224 (S.D. Tex. Feb. 21, 2020).

Similar entanglement is present here, particularly insofar as Sakyi requests that the Court review the propriety of the state court-entered divorce decree as to his interest in the home awarded to Berko.

The first factor and the related second factor therefore weigh in favor of abstention, so do the remaining factors.

"'[T]he importance of Texas'[s] interest in its own domestic-relations law is obvious.' In fact, 'there is perhaps no state administrative scheme in which federal court intrusions are less appropriate than domestic relations law.'" *Peterson*, 2019 WL 8017862, at *6 (quoting *Pollard*, 354 F. App'x at 94, then *DuBroff*, 833 F.2d at 561). And,

> [a]s to the fourth factor, "Texas obviously needs a coherent domestic-relations policy," *Pollard*, 354 F. App'x at 95, particularly with regard to divorce and property subject to state court orders. As to the fifth factor, "Texas has created 'a special state forum for judicial review' of divorce actions. *See* TEX. GOV. CODE ANN. § 24.601 *et. seq.* (establishing a comprehensive system of family courts). It goes without saying that these courts have the experience and expertise in Texas divorce law that federal courts lack." *Pollard*, 354 F. App'x at 95. "To superimpose the jurisdiction of this Court upon the [state court] would needlessly interfere with the state's administration of its own affairs in an area where the [state court] has particular expertise." *Lawrence v. Cohn*, 932 F. Supp. 564, 579 (S.D.N.Y. 1996) (quotations omitted).

*Id.* (citation modified).

In sum, Sakyi has shown no basis for federal question jurisdiction; he also has not shown a basis for diversity jurisdiction; but, assuming he has shown a basis

for jurisdiction under Section 1332, the domestic relations exception applies; if that exception does not apply, the Court should still abstain under *Burford*; and, on this record, there is no basis for the Court to retain jurisdiction to the extent that abstention is the sole reason to not address the wrongs that Sakyi alleges.

The Court should therefore dismiss this case without prejudice. *See, e.g.*, *Hill v. City of El Paso, Tex.*, 437 F.2d 352, 357 (5th Cir. 1971) (observing that abstention "must be approached on a case by case rather than any general principle basis" and that, "[w]hile the better practice in cases where the doctrine of abstention is to be applied is for the federal forum to retain jurisdiction rather than dismissing the action without prejudice, this Circuit has affirmed such dismissals in abstention situations," concluding that "[a]lthough it ought to be so obvious as to be redundant it appears apt to express that every asserted legal wrong neither needs nor finds a federal remedy" (citations omitted)).

**Recommendation**

The Court should dismiss this action without prejudice.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and

- 15 -

recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: October 6, 2023

_____
DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE